Good morning, may it please the court. I'm Jay Marble from the Tucson Federal Defender's Office, and I'm arguing this morning on behalf of Juan Jose Corona-Pena, and I'd like to reserve two minutes for rebuttal. Taylor requires this court to establish a federal generic definition of a firearms offense under 2L1.2. Our position is that the possession must be a knowing possession of a 58-45 firearm. There are three reasons that support our conclusion. One, under the rules of statutory construction, it must be a knowing possession of the prohibited type of weapon. Two, there are other examples and guideline provisions that require a mens rea requirement in order for an enhancement to apply. And finally, an enhancement under 2L1.2 for a firearms offense is a severe punishment that should be only if there's a knowing possession of a firearm. Under the rules of statutory construction, the possession should be a knowing possession of a prohibited weapon. To determine what really what Congress and the Sentencing Commission intended with the drafting of this guideline, I'd ask the court to look to Estrada-Espinosa. Estrada-Espinosa told us that absent congressional guidance as to the elements of offense, we may look to an equivalent federal statute. The equivalent federal statute that I'd refer the court to is 26 U.S.C. 5861d. While it does not have the exact language, that statute prohibits possession of an unregistered firearm. And I think we should look to 5861d, and there's some reasons why. As I mentioned, that's a federal statute for possession of a 58-45 weapon. Both 58-45 and 5861d are part of the National Firearms Act. When the national, and I'd refer the court also to the Supreme Court case of Staples versus United States was a 1994 Supreme Court case. You know, because time is limited, once you zero in, what do you think is missing from the federal, from the statute of conviction that is necessary that's present in the federal law? I think what's the element? It's knowing, a knowing possession. And under the Supreme Court case of Staples, Staples broke down the statute of reconstruction, actually, of 5861d. And when they broke it down, although 5861d is silent as to the mens rea element, the Supreme Court said there's a longstanding tradition under the common law rule that a criminal crime have a mens rea element. So we have a federal requirement of knowledge, and how do we know there's no such requirement in state law? In Illinois, Mr. Cardona-Pena's conviction was in the state of Illinois. In Illinois, I cited two cases which showed that there is not a mens rea requirement for possession of an unlawful use of a weapon as termed in Illinois. That was People v. Wright and People v. Ivey. In each instance, those cases found that the person was guilty of that crime. Those are intermediate appellate decisions in Illinois. Correct. And there's no State supreme court? I did not cite. That you are aware of. That I'm aware of. Correct. Okay. Is there anything more to your case on the categorical approach? Well, yes, Your Honor. I would refer to an amendment of the guidelines under 4B1.2, I think, which supports our position that it should be a knowing possession. That was an amendment in 2004 to 4B1.2 with amendment 674. Amendment 674 made it automatically a crime of violence for when a person possesses a 5845 weapon. In the explanations to the amendment, the Court made it clear that they were referring to the National Firearms Act and possession of a 5845 weapon. And in doing so, the commission referenced what's caused Congress's intention was determining that the inherently dangerous nature of these weapons made it unlawfully to possess automatically. And I think what's important is in that amendment, it's talking about Congress's intention, reference to the National Firearms Act, which includes, again, both 5845 and 5861d. And by that time, the commission would be aware of the Supreme Court case in 1994, Staples, that made it had to be a knowing possession of a weapon. So that's why we're asking the Court in this case that for under 201.2, it also should be a knowing possession of a firearm. Okay. How about the modified categorical approach? Well, if the Court were to get to the modified categorical approach, I think that the documents that were submitted. But we have to unless you lose on the categorical approach, right? Correct. So you hope we will. Correct. So I think what you want to say is when the Court gets to the. Well, in that case, Your Honor, there's really. There's no confidence in your argument. There's two documents that I think were relied upon at the district court level, and those documents were not sufficient, were not sufficiently reliable. And those documents were electronic printout from the Cook County District Court and also a transfer from immigration here, a subsequent immigration hearing that Mr. Coronapena had. And regarding the electronic printout, Your Honor, I don't think that establishes the reliability as in which the courts determined in Snellenberger and Strickland for this type of document. This type of document seems to be really a procedural summary of what was happened in the case. What Snellenberger. So when it's ER 29233. Yes, it is, Your Honor. Okay. And what I direct the Court to is Illinois law requires that the Court create and establish a book of dockets or records used in the case. The Illinois statute are silent as to electronic printout. We're really uncertain the reliability of this document. Is it just generated at the time it's requested? In this case, it was generated several years later, I think seven years later, most likely from the U.S. Attorney's office. How does it help anyway? Excuse me? How does it help anyway? Well, it's – I don't think it helped. It's too unreliable. It's too confusing to know. It's perfectly unreliable. Does it say knowledge? What it shows is that on, I think, April 3rd of 2002, Mr. Coronapena entered a plea of guilty, but it doesn't establish what happened. It's, yeah, April 3rd. He pled guilty, right? Correct. But it doesn't establish what happened at the hearing. I mean, he pled guilty to whatever the crime, state crime is. Correct. It doesn't really add anything, does it? Well, that's – I think that question is an open question. We're not – with this printout, it's probably not the best document to refer to to determine whether or not what happened at that hearing. Although the list is not exclusive, Shepard has told us that plea colloquies, transcripts from the hearing would be the ideal sources to determine what actually happened at that hearing. I think the electronic printout doesn't give us knowledge of what happened. It's unreliable. You have two minutes left. Do you want to say that? Yes. Okay. We'll hear from the government. May it please the Court. I'm Bob Niskell from the U.S. Attorney's Office in Tucson. And we have the United States in this matter. As to the first argument the defense counsel makes, the Illinois statute at issue, which is quoted in page 11 of the government's brief, does require, by its terms, let the possession be knowing. So the Illinois statute does contain an element of knowledge, even if you assume that's the point. What do you do with those State cases? I don't – what the State cases that he cites in his brief basically say he doesn't have to specifically know the exact barrel length of the sawed-off shotgun, which is actually very similar to what the Federal law requires under 5861, which where the government has to prove the defendant knew it had features that made it illegal, not the specific dimensions of the gun or anything. So in that sense, the Illinois statute, and even if you use Federal law, which the government thinks you don't need to in this case, they're basically ruined. I'm sorry. It's the Ivy says barrel length. It's on page 18 of the defendant's brief. Well, it says the defendant contends, this is 403. This is 479 North East 2nd at 403. The defendant contends, however, the State was required to prove that she knew the gun was a sawed-off shotgun. And at the end of the paragraph, they answer that question by saying, rather, it was sufficient, this is now on page 404, for the defendant's conviction that she have knowledge that she possessed the gun in question, which because of the dangerous capacity was a subject of legislative enactment. So they seem to reject the contention that she needed to know it was a sawed-off shotgun. Right. Nothing about barrel length. I think you were mistaken in your characterization of Ivy. Should we look at the next case? Should we look at the next case? I mean, do you have something to say about Ivy that I'm missing here? There's something about barrel length here that I'm missing? People versus right. No, no, let's talk about Ivy first. Right. Let's make sure. Are you now – are we now agreed that Ivy does not talk about barrel length? Ivy, as I understand it, talks about whether it's – the knowledge of whether it's a sawed-off shotgun or not. Right. Did you hear my question? Let me repeat it. Okay. Are we now agreed that Ivy is not about barrel length? Yes or no? No, because I would say the barrel length is what makes it a sawed-off shotgun. Okay. I thought what you said is that she – that what the Illinois cases reject this idea that she needs to know the specific lengths of the gun. And then – So if we want to agree, what you're saying is she did not have to know that this was a sawed-off shotgun. In other words, she might have thought that this was a gun that was of a legal length and she could still get convicted. Okay. I – That's what Ivy says? I would agree with that. Okay. So – so she does not have to have knowledge that this is a gun with a legal length of shot – of – of barrel, right? Okay. Yes. Okay. And doesn't Staples hold exactly the opposite as to Federal law? Staples – We'll look at it in a minute. I just want to make sure we – we understand each other on Ivy. Staples, as I understand it, requires that the dependent know that there is something about the gun that would make it subject to regulation. Okay. So – so – and that is not present in Ivy, as best we can tell. Ivy seems to say it's enough she knew – she possessed the gun. She does not have to know of its illegality. As far as I read it, if I'm wrong about that, you better set me straight, because if you don't, I'm going to vote against you on this point. So – so this is your chance. I am not – This is what's called a pregnant pause. Yes. I am trying to be careful in how I phrase this. I am not seeing a distinction between not knowing that you possess a shot – a sawed-off shotgun and, under Federal law, knowing you possess an instrument that is dangerous enough that it's probably subject to regulation. That's – that's interesting that you don't see the distinction, but that's not what I asked you about. Okay. Okay. What I asked you about is – and let me repeat it again. You know, if you can't answer the question, you can just say I can't answer the question, I won't answer it, that's okay. But, you know, your chance to persuade me will have passed. As I read Staples, Staples says you've got to know that this is not simply a weapon, but this is something that gives you notice that it's an illegal weapon. Correct me. Ivey seems to say, as best I can read the language in 403 or 404, that all you have to do is know that it's a weapon, that knowing about its illegality or the things that make it illegal is not part of the offense conduct. Okay. That's how I'm reading it. Okay. And if you think that I'm wrong in my reading of these two cases, this is your chance to talk me out of it. If you – if you don't, that's okay. We can go to the next case, but you should know that I'm not persuaded. What I'm focusing on is the lighter Illinois case of Wright. I understand. And we'll get to Wright. Okay. But right now I'm talking about Ivey. Okay. And if you want to let Ivey go, we can go on to Wright, because I really would like to have a discussion with my colleagues, and, you know, I have a – you know, I want to express my position. I want to understand what the government's position is on Ivey. Now, if you say Ivey doesn't help you, or you can't distinguish Ivey, or my characterization of Ivey is correct, let's go on to Wright. Let's go on to Wright. Okay. Good. Okay. I've got Wright. Now let's see what we've got in Wright. Okay. I think we're looking now at 488. This stuff gets harder to read with time. It must be the – Keep making the print smaller. Is that what's going on? It's terrible. Anyway, so I'm now looking at 488 Northeast 2nd, and the language that I am focusing on that seems relevant to me is at 1349. Or maybe there's something else I would be looking at. Because here it says the intent of the legislature enacting Section 24187 was to prohibit devices containing explosive materials, and then they go on to say, in language that seems to be relevant, in view of this purpose, we do not believe that Section 24-1A7 requires the defendant to know the bare length of the shotgun he possesses as part of the mental state which ignorance or mistake would then be negative. Well, not quite English, but hey, close enough. Now, this seems to specifically say that knowledge of the bare length is not relevant. Right. Which is, again, contrary to what you started out representing these cases stand for. Are you – am I missing something here? If I said that, that's – I'm sorry, I was – I don't believe I said that, but if I did, I'm sorry. I'm not – that's what I understood you to say. If I misunderstood, that's perfectly fine. I just want to make sure we're now seeing – we're now seeing the same thing. Right. Okay. So what is it about this case that helps you? Well, again, I would say that the fact that just as somebody under Illinois law could be convicted without knowing the barrel length, the exact barrel length of the gun, somebody could be convicted under the Federal statute to the extent that statute is relevant with the same – without the same knowledge, as long as the government shows that they knew it was an instrumentality that was probably subject to regulation. Okay. And that's how you read Staples? Yes. And this court says – now, if we were to disagree with you on your reading of Staple, and I'm not sure we will, but let's say we do, and we get into the question of proof in this case, you do agree that there is not enough to sustain a finding of knowledge based on the modified categorical approach, right? I think the combination of the information charged – that charged the crime in the Illinois court, which was part of the record in this case, combined with that – I'm sorry. When you say that, that's very vague. What specifically are you referring to? Usually when we do a modified categorical approach, we look at specific documents. Right. We don't just sort of talk in general. So what is it exactly now that you're looking at in Illinois? It's an excerpt of record at page 7. It's the charging document in the Illinois court. Okay. And he's charged with knowingly possessed a shotgun with a barrel length of less than 18 inches. So you think just pleading guilty to that because that's a charging document is enough? That, combined with the evidence showing that he did plead – I think the evidence demonstrates he pled guilty to that charge. But that doesn't show anything more than he pled guilty to the statute, right? To – that's a document I was looking at with defense counsel. Right. All it shows is a plea of guilty to 14302 to this particular charge. It doesn't add knowledge or anything else. It shows that he pled to the knowingly possessed element or prong of that Illinois statute. That's what the documents show. But it doesn't add anything to this particular document. All it says is he pled guilty to what's charged here. That's correct. So whatever we're going to find, we're going to find in the – what is it called, an indictment? What is it called? It's – I think it's an information indictment. Information, yeah. Information, yeah. Okay. All right. Information. Okay. Okay? Thank you. Thank you. Your Honors, we'd ask the Court to read Staples as the following rule, which I think is – which is our position, that it requires a knowing possession of a 5845 weapon and a knowing, as the Court discussed in Staples, is knowing what puts it into the category of being a 5845 prohibited weapon. It requires it to be – have the barrel length less than the specifics specified by statute. What's your position on the modified approach and specifically the docket entry? My position is it's not reliable. We don't know what the ledger means. We weren't provided with a ledger. We were provided with an information. We don't know what actually happened at that change of plea hearing. As I mentioned previously, we're just – we're left looking at what that electronic printout is. I don't think that's a reliable document under Snellenberger or Strickland. What element of Strickland do you think is not present? I think that it misses, really, the element that is prepared closely or related to by the clerk who has the duty of preparing those documents. In Snellenberger, the Court relied on this docket – these docket sheets because they knew that they were prepared by the courtroom clerk who was present at the time of the change of plea, who was able to, in a short period of time, relay the information onto the docket sheets. So that's the issue. That's why it's reliable. Here, we don't have that – the affirmance that this was actually created close in time to when the change of plea happened. As I mentioned earlier, I think that the electronic printout on – I think it's an excerpt of Record 33 – shows that this electronic record was generated seven years after the actual time of the change of plea. I think that lapses the issue of reliability and the issue of that it's – that Snellenberger told us what makes these documents okay to use. And it also – remind the Court that under 2L1.2, a firearms offense generates a 16-level enhancement for – when the person has a prior conviction for a firearms offense, which is the most severe penalty. And I think that only with a knowing possession should that enhancement be allowed, and especially – and then again with reliable documents. Okay. Let's say we were to agree with you. What would be the remedy? The remedy would be that this enhancement does not apply to Mr. Coronapena. I think the Court would find that based upon – We reverse the judgment. We vacate the sentence. We vacate with instructions. What is the bottom line of what we are asking us to do? I think the Court can look at the information that's been provided, the same information the district court had, and find that there was – Well, he's asking for the bottom line. Aren't you looking for us to vacate the sentence, remand for re-sentencing with instructions not to use the enhancement? Isn't that what you're asking? Correct. My only – What I thought you wanted was a sentence under 1326A rather than 1326B. Well, I would say it's probably not appropriate. Well, that would be – I'm sure Mr. Coronapena would like that. However, 1326 – actually, I'm sorry. I'm mistaken. I do think there's probably proof that could be considered proof of a felony conviction, but I don't think we have any other enhancement. And under 13 – 201.2, we can look to – that would be a four-level enhancement as opposed to a 16-level enhancement. But I don't think there's other information. Well, let me make sure I understand. You're arguing for remand to the district court for re-sentencing, at which point the district court could impose a – I mean, assuming we were to agree with you, without the enhancement, but could essentially come up with the same sentence by upward departure or a high on the sentencing – I mean, I don't know how the numbers – Yes. But that would be a separate exercise of discretion. Correct. Okay. Okay. Thank you. This is how you will stand submitted.
judges: Kozinski, Hawkins, Gould